100　201<br>133　358

# Davis's Appeal.

1. A testator by his will provided that the principal of his estate should be and remain securely invested, and that all the interest and income thereof should be given to and equally divided between his four children and two grandchildren. Upon the death of one or more of said children and grandchildren, testator directed that those remaining should receive the whole of the interest or income, share and share alike. On the death of all said children and grandchildren, testator directed the principal of his estate to be divided among his lawful heirs. The estate consisted of personalty. *Held*, that testator's children and grandchildren did not take an absolute, but merely a life estate, and that the principal was properly awarded to the executor upon the trusts of the will.

2. In the above case, the assets of the estate amounted to $28,202.67. The executor upon filing his account appeared to have in his possession a balance of $25,737, of which $25,000 remained unconverted in the same

[Davis's Appeal.]

securities left by testator. The court below awarded the executor a commission of five per cent. on this balance. *Held*, that the Supreme Court would not review the discretion of the court in this respect.

March 27th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term 1881, No. 277.

This was an appeal by William T. Davis from a decree of the said court in the matter of the estate of John Davis deceased.

The facts of the case were as follows:—John Davis died August 11th 1879 leaving him surviving a widow Maria G. Davis, two sons John Davis Jr. and William T. Davis; two daughters, Elizabeth S. Murray and Maria Reese, and two grandchildren, issue of a deceased son Robert P. Davis, viz., Annie L. and Bella Davis. By his will bearing date March 11th 1878 said John Davis devised all his estate to his wife for life, and further provided as follows:

" Item.—Immediately after the death of my beloved wife Maria Davis, I desire and will that the principal of all my estate be and remain securely invested, and that all of the interest or income of said estate be given to and equally divided between my children and my two grandchildren share and share alike, the two latter being children of my son Robert P. Davis, deceased.

" Item.—Upon the death of one or more of the above children and grandchildren 'tis my desire and will that those remaining shall receive the whole of the interest or income of my estate share and share alike.

" Upon the death of all of the above children and grandchildren then tis my will that the principal of my estate be divided amongst my lawful heirs."

Testator nominated as his executor his son John Davis, Jr.

On October 8th 1879, testator's widow died. The assets· of the estate amounted to $28,202.67, and consisted chiefly of city sixes and railroad bonds and stock. Upon the audit of the executor's account the balance in his hands appeared to be $25,737, of which $25,000 still remained invested in the securities purchased by the testator in his lifetime.

The accountant claimed a commission of five per cent. and also claimed to retain the fund to carry out the trust created by testator's will. William T. Davis objected to the commission as excessive, and also contended that under the will testator's children and grandchildren took an absolute interest in his estate.

The auditing judge, ASHMAN, J., allowed the commission

claimed and awarded the fund to the accountant upon the trusts contained in the will.

Exceptions were filed by William T. Davis to the adjudication, which were dismissed by the court, the adjudication being confirmed. William T. Davis thereupon took this appeal assigning for error the decree of the court.

*Benj. Harris Brewster*, for the appellant.—An unrestricted gift of the income of a fund is equivalent to the absolute gift of the fund itself: Hellman *v.* Hellman, 4 Rawle, 440; Schriver *v.* Cobean, 4 Watts 130; Wilson *v.* McKeehan, 3 P. F. Smith 79; Parker's Appeal, 11 P. F. Smith 485; Keene's Appeal, 14 P. F. Smith 268. The existence of a trust does not prevent the operation of this rule: Garrete *v.* Rex, 6 Watts 17; Robert's Appeal, 9 P. F. Smith 70; Pennsylvania Co's Appeal, 2 Norris 312; Millard's Appeal, 6 Norris 457.

To preclude the legatees of personalty from taking an absolute estate, the testator's intention to give them a life estate only must be explicitly expressed. If the gift over in this case is to take effect at all, it must be in derogation of the prior absolute estate. But a familiar rule of law stands in the way of this interpretation. Where a gift of the absolute interest in property to one person is followed by a gift of it to another upon the happening of a particular event, it is the well-known policy of the courts to put such a construction on the gift over as will interfere as little as possible with the prior gift: Cambridge *v.* Rous, 8 Vesey 12; Ommaney *v.* Bevan, 18 Ves. 291; Fulton *v.* Fulton, 2 Grant's Cas. 28; Karker's Appeal, 10 P. F. Smith 141.

The trust in this case is a dry one and self executive: Rife *v.* Geyer, 9 P. F. Smith 396; Ogden's Appeal, 20 P. F. Smith, 501; Dodson *v.* Ball, 10 P. F. Smith 492; Harkinson *v.* Bacon, 34 Leg. Int. 306.

The allowance for commissions was excessive: Walker's Estate, 9 S. & R. 223; Montgomery's Appeal, 5 Norris 230.

Appellee did not appear, and presented no paper-book.

Mr. Justice GREEN delivered the opinion of the court April 24th 1882.

The very able argument of the learned counsel for the appellant has not convinced us of any error in the decree of the court below. Under the will of John Davis, Sr., the trustee was not the mere recipient, and passive holder, of the legal title, without duties to perform. The entire principal of the estate was to be securely invested and so remain during the lives of all the children, and the two grand-children, and the income

to be paid to them in equal shares. Upon the death of any one of the children or grandchildren, those who survived were to receive the entire income of the fund, and when all were dead the fund itself was to be given to the lawful heirs of the testator. Who the lawful heirs of the testator may be, is of course very uncertain, but they cannot possibly be any of those who are to receive the income of the fund, because these must all be dead before the gift over can take effect. There is, therefore, a duty to preserve the estate, in order that it may be divided amongst those who are entitled after all who have received the income shall have died. Moreover this duty is absolute. It is not in any sense discretionary with the trustee. Nor is there any power of disposal by will vested in the cestuis que trust for life. And in addition to this there is a previous estate for life in the widow, in the entire estate of the decedent real and personal. The lawful heirs of the testator are not necessarily, by any means, the same persons as the lawful heirs of his children and grandchildren. In all these respects the case differs from those in which the rule prevails that the gift of the produce of a fund is the gift of the fund itself. That rule is very carefully stated by the present Chief Justice in Keene's Appeal, 14 P. F. S. on p. 274, thus: " It is unquestionably a well settled rule that although the interest only of a fund be bequeathed, yet if the bequest be indefinite and without an ultimate limitation over, it will carry the principle absolutely." As stated by Mr. Justice KENNEDY in Hellmans v. Hellman, 4 Rawle 450, it is subjected to the expression of a contrary intention by the testator. Thus KENNEDY, J., says : " Prima facie a gift of the produce of a fund is a gift of that produce in perpetuity ; and it is consequently a gift of the fund itself, unless there is something upon the face of the will to show that such was not the intention." In Keene's Appeal the limitation over, although to the lawful issue of the legatees of the interest, was held a sufficient expression of an intention that the brothers were to take for life only. In the present case the testator expressly directs that upon the death of one or more of the grandchildren, those who remain shall take the whole of the interest in equal shares, and this process is to continue until all are dead. This is a clear limitation of the right to the interest during the lives of the children and grand-children in succession until all are dead, and excludes the idea of an absolute estate in the principal in the whole body of the legatees. If such an estate were to pass it would defeat the right of the survivors in succession, of those who died, to the whole of the interest, and thus work a result contrary to the express words of the bequest. But there is beyond this a

[Davis's Appeal.]

limitation over after the death of all the legatees of the interest, of the whole principal of the fund, to a well defined class of persons who can readily be ascertained. If the chilren and grandchildren die leaving lineal descendants, such descendants will be the lawful heirs of the testator. But if they all die without leaving any descendants, then the fund, being personal estate, goes, not to the next of kin of the children and grandchildren, which would include relations on the mother's side, but, by force of the limitation of the will, only to such of the next-of kin, as would inherit from the father. It is clear then, that in order to preserve the estate for the uncertain persons who are to take it after the death of all the legatees for life, it is necessary to continue the legal estate in the trustee to enable him to perform his duties. In Bacon's Appeal, 7 P. F. S. 504, the subject of the trust was real estate which was given to trustees, who were to receive the rents and income thereof, and pay it over to the daughters during life and after the death of the daughters and their husbands to convey it to the right heirs of the daughters in fee. On p. 512 STRONG, J., said : "Had the trust no other object than the special one of protecting the property for the separate use of the daughters, it might have been left as it was first constituted. The imposition of a duty to receive and pay over the income would have been needless. But the injunction of active duties during the life of each daughter evinces a purpose begun, that of maintaining separate uses. It involved the necessity of management and care of the real estate, and of preservation for those entitled in remainder . . . So long as active duties remain to be performed by the trustees, the legal estate must continue in them to enable the performance." This being true of real estate which is permanent and enduring and requires no change, it is still more true of a trust fund which consists of securities only (in this case stocks and bonds) requiring constant care and watchfulness, and possibly frequent changes. It is absolutely essential in such a case if the trust is to be performed at all, that the estate of the trustee should be continued until the trust itself has expired by the limitations of the will. It is almost needless to add that the interest of the legatees for life is an equitable one, and that of those in remainder a legal one, since as to the latter nothing is to be done but to divide among them the principal of the fund.

On the subject of commissions we see no sufficient reason for interfering with the action of the auditing judge and the Orphans' Court. In view of all the circumstances it is not clear that the amount allowed was unreasonable.

Decree affirmed at the cost of the appellant.